**STATE of Maine**

v.

**Frederick M. HUNTLEY.**

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 16, 1996.
Argued April 2, 1996.
Decided July 30, 1996.

Michael Cantara, District Attorney, David Gregory (orally), Alfred, for the State.

Thomas G. Van Houten (orally), Schwartz & Schwartz, P.A., Portland, for Defendant.

Before WATHEN, C.J., ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

Frederick M. Huntley appeals from the judgments entered in the Superior Court (York County, *Saufley, J.*) on jury verdicts finding him guilty of seven counts of gross sexual assault, Class A, in violation of 17–A M.R.S.A. § 253(1)(B) (Supp.1995); nineteen counts of gross sexual assault, Class B, in violation of 17–A M.R.S.A. § 253(2)(H) (Supp.1995); and one count of unlawful sexual contact, Class C, in violation of 17–A M.R.S.A. § 255(1)(C) (Supp.1995). Huntley contends that certain evidentiary rulings of the trial court and the court's reinstruction to the jury require that the judgments be vacated. Finding no reversible error in the record, we affirm the judgments.

The charges as set forth in the February 8, 1994, indictment of Huntley involve his alleged illegal conduct from January 1991 through July 1993 toward his three minor stepchildren: Kevin, born January 11, 1976; Kendra, born September 23, 1977; and Krista, born December 18, 1981. At the trial of this case in November 1994, each of the children testified, *inter alia*, to various acts of sexual abuse committed by Huntley. Huntley did not testify and presented no witnesses on his behalf. The jury returned verdicts finding Huntley guilty of the charged offenses. From the judgments entered accordingly, Huntley appeals.

I

■ Huntley first contends that the trial court committed reversible error by sustaining the State's objection to his initial question on cross-examination of Kevin, "Now, where are you currently residing ...?" He argues that the court's ruling deprived him of the right "to be confronted with the witnesses against him" guaranteed by the Sixth Amendment to the United States Constitution,[1] and that it was essential to his right to a fair trial to place Kevin, who at the time of trial was committed to the Maine Youth Center, in his proper setting. To support his contention, he relies on the decision of the United States Supreme Court in *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), vacating a judgment of conviction on the ground that the trial court erred by prohibiting the defendant from asking a key prosecution witness, in federal custody, "Where do you live ...?" The Court stated, "The question 'Where do you live?' was not only an appropriate preliminary to the cross-examination of the witness, but on its face, without any ... declaration of purpose ... was an essential step in identifying the witness with his environment, to which cross-examination may always be directed." *Id.* at 693, 51 S.Ct. at 220. *See also Smith v. Illinois*, 390 U.S. 129, 132, 88 S.Ct. 748, 750, 19 L.Ed.2d 956 (1968) (reaffirming this express language). We conclude, and the State concedes, that based on the authority of *Alford* and *Smith* it was a constitutional error for the court to sustain the State's objection to Huntley's inquiry of Kevin. We disagree, however, with Huntley's contention that this error requires that the judgments be vacated.

■ In *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, *reh'g denied*, 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967), the Court rejected the argument that all federal constitutional errors, regardless of the nature or circumstances of the case, require the reversal of a judgment of conviction. The Court reasoned that certain constitutional errors, like other errors, may be "harmless" in the context of the effect on the factfinding process. The Court noted that long ago the rule had been established for the federal courts that judgments shall

1. Amendment VI to the United States Constitution provides, *inter alia*, that in all criminal prosecutions the accused shall enjoy the right to be confronted by witnesses against him. This right is made applicable to the States through the Fourteenth Amendment. Article 1, Section 6 of the Maine Constitution contains a similar guarantee.

not be reversed for "errors or defects which do not affect the substantial rights of the parties," 28 U.S.C.A. § 2111 (West 1994), that all 50 states have harmless-error statutes or rules [2] and that "[n]one of these rules on its face distinguishes between federal constitutional errors and errors of state law or federal statutes and rules." *Chapman*, 386 U.S. at 22, 87 S.Ct. at 827. The Court concluded that federal law governs the determination whether a violation of a federal constitutional right is harmless error and for an error to be declared harmless "the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828.[3]

The Court has applied the harmless-error analysis to violations of a number of federal constitutional rights, including the confrontation clause of the Sixth Amendment. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). *See also Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973) (denial of opportunity to cross-examine adverse witness does not fit within limited category of constitutional errors deemed prejudicial in every case). In *Van Arsdall*, the Court noted that the confrontation clause of the Sixth Amendment does not prevent a trial judge from imposing limits on a defendant's inquiry into the potential bias of a prosecution witness. The Court held "that the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, *like other Confrontation Clause errors, is subject to Chapman harmless-error analysis.*" *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438 (emphasis added). The Court stated:

> Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id.* (citations omitted).

In the instant case, the trial court reaffirmed that Huntley could inquire as to Kevin's conviction of two counts of unlawful sexual contact, but that Kevin's presence at the Youth Center added nothing to the issue of his credibility or bias. Consistent with the court's ruling, Huntley inquired, *inter alia*, on cross-examination of Kevin whether he was "the same Kevin ... who was convicted in the Wiscasset District Court, sitting as the Juvenile Court, of the offenses of unlawful sexual conduct in February [1994]," to which Kevin responded, "[y]es." Applying the principles articulated by the United States Supreme Court to our review of the entire record of this case, we conclude that the trial court's constitutional error was harmless beyond a reasonable doubt. *See State v. Hassapelis*, 620 A.2d 288, 293–94 (Me.1993) (applying *Chapman* harmless-error analysis to claimed denial of accused's right of confrontation).

## II

■ Huntley next contends that the trial court erred by not permitting him to elicit by cross-examination of Krista that she was the victim of Kevin's offenses of unlawful sexual contact. He argues, as he did before the trial court, that notwithstanding the provisions of M.R. Evid. 412,[4] his Sixth Amend-

---

2. Maine Rule of Criminal Procedure 52(a) is the same as Federal Rule of Criminal Procedure 52(a) and provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

3. There are a number of violations of constitutional rights that do not lend themselves to a harmless-error analysis. A coerced confession, the right to counsel and the right to an impartial judge were noted by the Court as "so basic to a fair trial that their infraction can never be treated as harmless error...." *Chapman*, 386 U.S.

at 23, n. 8, 87 S.Ct. at 828, n. 8. *See also* 2 Cluchey & Seitzinger, *Maine Criminal Practice* § 52.2 at IX-128 (1995) ("This list may be supplemented by the right to an impartial jury, certain instances of presumed ineffective assistance of counsel at trial, re-trial in violation of the double jeopardy clause, and violation of a defendant's right to a speedy trial.") (citations omitted).

4. M.R.Evid. 412 provides in pertinent part:
   **(b)** In a criminal case in which a person is accused of rape, gross sexual assault, gross

ment right to confrontation entitled him to inquire into Kevin's sexual abuse of Krista to establish that Krista's charges against Huntley and her testimony at the trial had been coerced by Kevin. We disagree.

We have previously noted that the limitation of Rule 412 must be weighed against a defendant's constitutional right to present a proper defense by effective cross-examination. *State v. Jacques,* 558 A.2d 706, 708 (Me.1989) (citing *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (holding that state's interest in protecting anonymity of juvenile offenders could not bar defendant from eliciting on cross-examination that key prosecution witness was on juvenile probation for burglary both at time he identified defendant and at time of trial)). *See Van Arsdall,* 475 U.S. at 683, 106 S.Ct. at 1437 ("Davis should not be read as establishing, without analysis, a categorical exception to the harmless-error rule."). Here, the record of an in-chambers conference of the court and the parties discloses that Kevin's offenses were committed in mid-December of 1993 or early January of 1994, after Krista's October 1993 report to the police that Huntley had sexually abused her. The court permitted Huntley on cross-examination of Krista to explore directly the issue of whether she had been coerced by Kevin. On this record, the trial court properly determined that imposition of the provisions of Rule 412 did not restrict Huntley's constitutional right to confront the witness.

■ Huntley further contends, for the first time, that the challenged inquiry of Krista should have been admitted to establish an alternate source of knowledge of sexual activity. *See Jacques,* 558 A.2d at 708 (allegations of past sexual abuse by person other than the accused relevant to rebut inference by jury that young child so sexually naive that he could not have fabricated

charges of sexual abuse). Because this issue was not preserved at trial, pursuant to M.R.Crim.P. 52(b), we review the record only for obvious error and find none. *State v. Gilman,* 637 A.2d 1180, 1181 (Me.1994).

### III

■ Huntley next contends the court committed reversible error by its preliminary ruling on his motion *in limine.* He argues that the court's refusal, pursuant to M.R.Evid. 404(b), to preclude the State from any inquiry relating to uncharged sexual acts with his stepchildren chilled the exercise of his constitutional right to testify on his own behalf. We disagree. Because Huntley chose not to testify and make appropriate objections to questions asked of him by the State on cross-examination, his challenge to the court's *in limine* ruling is not preserved. *State v. Naoum,* 548 A.2d 120, 125 (Me.1988). Accordingly, we review the ruling only for obvious error affecting substantial rights and will vacate the judgments of convictions "only if the conviction[s] [were] produced by a fundamentally unfair trial." *State v. Dunn,* 480 A.2d 788, 790 (Me.1984); M.R.Crim.P. 52(b); M.R.Evid. 103.

Maine Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." We have repeatedly stated that this rule does not prohibit the use of such evidence when offered as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *See, e.g., State v. DeMotte,* 669 A.2d 1331, 1335 n. 10 (Me.1996) (quoting M.R.Evid. 404(b) advisers' note); *State v. Nadeau,* 653 A.2d 408, 410 (Me.1995). The trial court's ruling did not so clearly interfere with Huntley's right to a fair trial as to

---

sexual misconduct, unlawful sexual contact, or sexual abuse of a minor, the only evidence of a victim's past sexual behavior that may be admitted is the following:

(1) Evidence of specific instances of sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury; or

(2) Evidence of specific instances of sexual behavior with the accused offered by the accused on the issue of whether the alleged victim consented to the sexual behavior with respect to which the accused is charged.

This rule was amended December 29, 1994, effective February 15, 1995, to include the offenses of gross sexual assault and unlawful sexual contact. Me.Rptr., 645–654 A.2d XLIV–XLV.

constitute obvious error. *Naoum,* 548 A.2d at 126.

## IV

▮ Finally, Huntley challenges the court's reinstruction to the jury. He argues that the court's refusal to include a reinstruction on the presumption of innocence in response to the jury's request to be reinstructed regarding reasonable doubt and the term "almost certain" was reversible error. Huntley does not challenge, nor on this record can he, the completeness and correctness of the court's initial instructions to the jury. "On review, we do not examine the challenged instruction in isolation. Instead, we view the charge to the jury in its entirety." *State v. Wright,* 531 A.2d 1270, 1271 (Me.1987) (citations omitted). In the present case, our review of the court's entire instruction to the jury discloses that there is "no possibility that the jury was misled by the court's reinstruction." *Id.*

The entry is:

Judgments affirmed.

All concurring.